NOTICE

Decision filed 07/15/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 220173-U

NO. 5-22-0173

IN THE

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jefferson County. |
| | ) | |
| v. | ) | No. 88-CF-73 |
| | ) | |
| CECIL SUTHERLAND, | ) | Honorable |
| | ) | Eric J. Dirnbeck, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE CATES delivered the judgment of the court.
Justice Hackett concurred in the judgment.*

**ORDER**

¶ 1    *Held*:    The petitioner has failed to make a substantial showing of a constitutional violation regarding his ineffective assistance of counsel claims. The judgment of the trial court dismissing the petitioner's postconviction petition at the second stage of proceedings is affirmed.

¶ 2    The defendant/petitioner, Cecil Sutherland, appeals the trial court's second-stage dismissal of his amended postconviction petition. The defendant claims that he made a substantial showing that his constitutional right to effective assistance of trial counsel was violated, and requests that this court reverse the second-stage dismissal and remand this cause for a third-stage evidentiary hearing on his ineffective assistance of counsel claims. For the reasons that follow, we affirm.

_____

*Justice Moore fully participated in the decision prior to his retirement. See *Cirro Wrecking Co. v. Roppolo*, 153 Ill. 2d 6 (1992).

1

¶ 3                    I. BACKGROUND

¶ 4    The defendant was convicted of the aggravated kidnapping, aggravated criminal sexual assault, and the first degree murder of Amy Schulz, after a jury trial in 1989. The defendant's conviction was affirmed on direct appeal. *People v. Sutherland*, 155 Ill. 2d 1 (1992). Subsequently, the Illinois Supreme Court granted the defendant postconviction relief and ordered a new trial. *People v. Sutherland*, 194 Ill. 2d 289 (2000).

¶ 5    At the conclusion of the defendant's second jury trial on June 16, 2004, he was convicted again of aggravated kidnapping, aggravated criminal sexual assault, and first degree murder. The defendant and the State agreed to the entry of a death sentence. The defendant filed a direct appeal. *People v. Sutherland*, 223 Ill. 2d 187 (2006), as modified upon denial of rehearing (Dec. 4, 2006). The attorney of record for the appeal was the same attorney who represented the defendant at his jury trial. The defendant's direct appeal to the Illinois Supreme Court was affirmed and remanded with instructions that the trial court impose sentences on the aggravated kidnapping and aggravated criminal sexual assault convictions. *Sutherland*, 223 Ill. 2d at 285-86. The factual basis for defendant's convictions is set forth in his prior appeal, *People v. Sutherland*, 223 Ill. 2d 187 (2006), as well as in the other appellate decisions. Therefore, we only recite those facts necessary for this disposition.

¶ 6    Following the defendant's unsuccessful appeal, he filed a postconviction petition with the assistance of counsel. While the petition was pending, the defendant's death sentence was commuted on March 9, 2011, by the Governor of Illinois, Patrick Quinn. Pursuant to the commutation, the petitioner was sentenced on his murder conviction to natural life imprisonment, without the possibility of parole or mandatory supervised release (MSR). According to the trial court's order, the defendant's counsel filed an amended petition for postconviction relief in

November 2017. The State filed a motion to dismiss the amended complaint in December 2018, and the petitioner filed an opposition to the State's motion to dismiss in May 2019.[1] On appeal, the petitioner does not challenge the sufficiency of the postconviction proceedings; thus, we recognize the amended postconviction petition in the record as the petition at issue in this case.

¶ 7    In his amended postconviction petition, the petitioner raised several constitutional issues related to ineffective assistance of counsel, claiming counsel failed to present exculpatory evidence, failed to corroborate the testimony of his own witnesses, failed to challenge the reliability of the State's evidence, failed to impeach the credibility of prosecution witnesses, and incompetently litigated the seizure of the petitioner's pubic hair. The petitioner also claimed that the State improperly argued the strength and reliability of the human hair evidence, presented unreliable canine mitochondrial DNA (mtDNA) evidence, misled the jury and defense counsel about the tire track evidence, and shifted the burden of proof to the defense during closing arguments.

¶ 8    The State filed a motion to dismiss the amended postconviction petition in 2018. The State's motion to dismiss deconstructed the petitioner's constitutional claims into 59 issues and sub-issues, each with a numeric identifier, which reflected the State's perspective of the petitioner's ineffective assistance of counsel claims. On May 29, 2019, the petitioner's counsel filed a response in opposition to the State's motion to dismiss the amended postconviction petition. The petitioner contested the State's interpretation of the ineffective assistance of counsel claims raised in the amended postconviction petition. On October 1, 2019, the trial court heard arguments from the State and postconviction counsel on the State's motion to dismiss the amended

---

[1]At the outset, we note that the file stamp on the petitioner's amended postconviction petition is also May 29, 2019. This apparent discrepancy of filing dates from the record is noted solely to ensure transparency.

3

postconviction petition. On February 28, 2022, by written order, the trial court adopted the State's numeric formatting of the issues and sub-issues which the State interpreted as the defendant's constitutional claims. The trial court then granted the State's motion to dismiss the amended postconviction petition. The defendant now appeals the second-stage dismissal of his amended postconviction petition.

¶ 9                                    II. ANALYSIS

¶ 10    On appeal, the petitioner alleges that he made a substantial showing that his constitutional right to effective assistance of trial counsel was violated. Further, the petitioner claims that the trial court erred when it dismissed his amended petition at the second stage of the proceedings.

¶ 11    The Post-Conviction Hearing Act (Act) provides a three-step procedural mechanism in which a defendant may challenge his conviction or sentence based on a constitutional violation. *People v. York*, 2016 IL App (5th) 130579, ¶ 15. At the first stage of postconviction proceedings, the court reviews the petition to determine whether it is frivolous and patently without merit. *York*, 2016 IL App (5th) 130579, ¶ 15. At the second stage of postconviction proceedings, counsel may file an amended petition on behalf of the defendant, and the State may file an answer or a motion to dismiss. *York*, 2016 IL App (5th) 130579, ¶ 16. The defendant must make a "substantial showing of a constitutional violation" to survive the second-stage proceedings. (Internal quotation marks omitted.) *York*, 2016 IL App (5th) 130579, ¶ 16. Further, the petitioner is required to support the allegations of a constitutional violation with the record in the case or by accompanying affidavits. *People v. Coleman*, 183 Ill. 2d 366, 381 (1998). When a petitioner makes claims outside of the record, " 'it is not the intent of the [A]ct that [such] claims be adjudicated on the pleadings.' " *Coleman*, 183 Ill. 2d at 382 (quoting *People v. Airmers*, 34 Ill. 2d 222, 228 (1966)). Instead, the function of the pleadings is to determine whether the petitioner is entitled to a hearing. *Coleman*,

4

183 Ill. 2d at 382. Simply put, the "substantial showing of a constitutional violation that must be made at the second stage [citation] is a measure of the legal sufficiency of the petition's well-pled allegations of a constitutional violation, *which if proven* at an evidentiary hearing, would entitle petitioner to relief." (Emphasis in original and internal quotation marks omitted.) *People v. Domagala*, 2013 IL 113688, ¶ 35. If a petition survives the second stage, an evidentiary hearing will be held on the defendant's claims. *York*, 2016 IL App (5th) 130579, ¶ 16.

¶ 12    A criminal defendant has a constitutional right to effective assistance of counsel at all stages of the proceedings as guaranteed by the sixth amendment. *People v. Brown*, 2017 IL 121681, ¶ 25. To establish an ineffective assistance of counsel claim, a defendant must show that counsel's performance fell below an objective standard of reasonableness and that, but for counsel's deficient performance, the result would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Simply put, the *Strickland* test consists of two questions: was counsel's performance deficient and was the petitioner prejudiced.

¶ 13    Considering the first prong of the *Strickland* test, whether counsel's performance was deficient, petitioner's counsel must have made errors so serious, and counsel's performance was so deficient, that counsel was not operating as the "counsel" guaranteed by the sixth amendment. *People v. Evans*, 186 Ill. 2d 83, 93 (1999). "A court measures counsel's performance by an objective standard of competence under prevailing professional norms. To establish deficiency, the defendant must overcome the strong presumption that the challenged action or inaction might have been the product of sound trial strategy." *Evans*, 186 Ill. 2d at 93.

¶ 14    For the second part of the *Strickland* test, the defendant must prove that he suffered prejudice. In other words, "the defendant must show that, 'but for' counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been

5

different." *People v. Lacy*, 407 Ill. App. 3d 442, 457 (2011). We do not, however, need to evaluate whether counsel's performance was deficient if we conclude that the defendant cannot show he was prejudiced. *People v. Hale*, 2013 IL 113140, ¶ 17. The defendant bears the burden of showing that both prongs of the *Strickland* test are proved. *People v. Morris*, 2014 IL App (1st) 130512, ¶ 32. In summary, to satisfy the requirements of an ineffective assistance of counsel claim, at the second-stage postconviction proceeding, a petitioner must make a substantial showing of a constitutional violation that will satisfy both prongs of the *Strickland* test. This court reviews the second-stage dismissal of a postconviction petition *de novo. Coleman*, 183 Ill. 2d at 388.

¶ 15     As previously noted, in his amended postconviction petition, the petitioner raised six general claims regarding ineffective assistance of counsel. The State's motion to dismiss divided these general allegations into 59 claims which represented the State's interpretation of the petitioner's claims of ineffective assistance of counsel. Each claim was identified by a number. The trial court adopted the State's use of numerical identifiers in its order that dismissed each of the petitioner's claims. The interpretation of the trial court's order is unintelligible without a road map, found only in the State's motion to dismiss.[2] This characterization was disputed by the petitioner. As the amended postconviction petition sets forth the petitioner's alleged claims of constitutional violations, we will rely on the petition and the remainder of the record to review the petitioner's claims on appeal. We will address them in turn.

¶ 16                              A. Evidentiary Claims

¶ 17     The petitioner claims that trial counsel was ineffective in addressing alleged evidentiary issues at his trial. The petitioner argues that trial counsel (1) failed to challenge either the State's

---

[2]This court strongly discourages the use of such a procedure in the future, as the claims belong to the petitioner, who disputed the State's interpretation. Furthermore, the use of numeric identifiers created a burden on the trial court and this court, and that should not be repeated.

microscopic hair comparison evidence or the mitochondrial DNA (mtDNA) results, (2) failed to challenge the State's fiber evidence, (3) failed to challenge the reliability of the State's canine mtDNA evidence and the significance of the microscopic dog hair comparison evidence, and (4) failed to challenge the State's evidence that the petitioner's car left the tire tracks at the murder scene. The petitioner further claims that he provided sufficient affidavits and evidence in support of the above-referenced claims to substantially show a constitutional violation entitling the petitioner to a third-stage evidentiary hearing. We disagree. After a thorough review of the record, we find that contrary to the petitioner's assertions of ineffective assistance of counsel, the petitioner failed to make a substantial showing as to the prejudice prong under *Strickland*. Therefore, as to his ineffective assistance of counsel claims relating to the human hair evidence, the fiber evidence, the tire track evidence, and the canine hair evidence, the petitioner cannot sustain his burden of showing that but for counsel's deficient performance, the result would have been different. Thus, an evidentiary hearing on these issues is not warranted, and the trial court properly dismissed these claims.

¶ 18    We begin our analysis with the petitioner's assertion that trial counsel did not contest the State's microscopic hair comparison evidence or the mtDNA results, particularly concerning the failure to impeach the expert testimony regarding these matters presented by the State during trial. The petitioner claims that there was available impeachment evidence that could have been used against Knight, the State's expert. To further support his claim, the petitioner argues that the amended petition and the documents included by postconviction counsel revealed discrepancies between the number, sizes, and colors of the hairs described by Knight in his testimony and those recorded on Knight's lab worksheet. The petitioner, however, does not challenge the authenticity of the evidence as testified to by Knight, and instead argues that trial counsel failed to impeach

7

Knight. In summary, the evidence would have implicated the petitioner irrespective of the impeachment strategy employed by trial counsel, including the strategy currently proposed by the petitioner on appeal. Furthermore, as highlighted by the State in its brief, a comprehensive review of the evidence presented against the petitioner reveals that the evidence, when viewed in its entirety, was overwhelming in connecting the petitioner to the crime scene.

¶ 19    The petitioner makes a similar argument on appeal as to the fibers found on the victim. Specifically, petitioner claims that trial counsel was ineffective for failing to challenge Knight's testimony as it related to fibers found on the victim that were consistent with the gold carpet from petitioner's car as well as trial counsel's failure to challenge the testimony regarding the fibers located in the petitioner's car that belonged to the victim's clothing. Further, the petition alleged that trial counsel failed to impeach Knight with available evidence to attack his credibility, testing procedures, and conclusions on the recovered fibers. The petitioner alleges that the failure to impeach Knight allowed circumstantial evidence to go unchallenged which connected the petitioner to the scene of the crime. Here, as is evident throughout this case, the evidence against the petitioner was overwhelming. The fiber evidence used against the petitioner at trial was not the only evidence used to support his conviction. In the petitioner's direct appeal, the Illinois Supreme Court found that the evidence was sufficient to support the petitioner's conviction, and notably mentioned that the State's expert, Harold Deadman, concluded that the fiber evidence created an "extremely remote" probability that the victim was not in the petitioner's vehicle shortly before or after she was killed. *Sutherland*, 223 Ill. 2d at 271. Therefore, the petitioner's claim surrounding these fibers must fail as petitioner cannot show that but for the deficient performance, the outcome of the trial would have been different.

8

¶ 20    Next, the petitioner alleges that trial counsel was ineffective when he did not challenge the State's evidence of canine mtDNA which showed that hairs from the petitioner's dog, "Babe," matched animal hairs found on the victim. The petitioner claims that trial counsel did not perform an adequate cross-examination of the State's expert, Dr. Halverson, at the *Frye*[3] hearing or at trial. Prior to trial, a *Frye* hearing was held to determine the admissibility of the canine hair testing procedure that was used on canine hair recovered from the victim. The trial court found that the requirements of the *Frye* hearing had been met, and that the protocol used by Halverson in mtDNA testing of dog hair could produce reliable results and was generally accepted by the scientific community. Thus, the trial court held the evidence was admissible. At trial, the State argued that canine hair recovered from the victim was consistent with canine hair that belonged to the petitioner's dog, which placed the petitioner and the victim together. The record indicates that trial counsel did not make an effort to rebut Halverson's testimony at the *Frye* hearing nor at trial. The record further indicates, however, that this evidence used by the State was not the only evidence that placed the petitioner with the victim. This case relied on several scientifically linked facts, which established that the petitioner was present with the victim at the murder scene. Other evidence, including additional hair and fiber analysis, was presented by the State at trial which placed the petitioner with the victim. In summary, the overall evidence presented against the petitioner was substantial and compelling.

¶ 21    The petitioner next alleges that trial counsel was ineffective for failing to challenge the tire tracks evidence used at trial by the State. In support, the petitioner alleges that trial counsel had available evidence to contradict the State's tire impression evidence, but that trial counsel failed to present it. Here, however, the record indicates that trial counsel cross-examined the State's tire

---

[3]*Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923).

9

tracks experts at length. Moreover, and as previously stated, the evidence against the petitioner was more than sufficient to prove the petitioner's guilt beyond a reasonable doubt. No single piece of evidence was used to convict the petitioner at trial. Thus, even if trial counsel had used the information at trial, as suggested by the petitioner in his amended postconviction petition, there is no indication from the record that the result of the trial would have been different. Notably, on the petitioner's direct appeal, the Illinois Supreme Court examined the evidence presented against the petitioner, which included the tire track evidence, and determined it was sufficient to support the petitioner's conviction. *Sutherland*, 223 Ill. 2d at 252.

¶ 22    In light of the foregoing, we find that the petitioner has not met his burden of showing a substantial likelihood of a constitutional violation by alleging ineffective assistance of counsel, as the petitioner cannot show prejudice under *Strickland* as to the aforementioned evidentiary issues raised on appeal. Thus, the trial court properly dismissed the petitioner's amended postconviction petition at the second stage of the postconviction proceedings at to these issues.

¶ 23                    B. Shift of Burden of Proof Without Objection

¶ 24    The petitioner next claims that trial counsel was ineffective in that he only objected once to the State's improper comments made throughout the trial that shifted the burden of proof to the petitioner. One such example was trial counsel's failure to object to the State's commentary that the petitioner "could have retested the State's evidence if he chose to do so." The petitioner referenced multiple alleged prosecutorial errors in his petition to which trial counsel did not raise objections. On appeal, the petitioner contends that trial counsel's lack of objection to the State's inappropriate shifting of the burden of proof resulted in prejudice against the petitioner. The petitioner, however, seems to offer only concise examples of situations in which they contend that trial counsel ought to have raised objections to "improper references." The petitioner does not

provide factual evidence of a reasonable probability that the outcome of the trial would have been different had trial counsel made the suggested objections. Thus, we find that the petitioner failed to make the substantial showing of prejudice under *Strickland* regarding this issue. Accordingly, we find that the petitioner has not met his burden to warrant an evidentiary hearing.

¶ 25                              C. Suppression Issues

¶ 26     The petitioner also claims that trial counsel was ineffective when he incompetently litigated suppression issues related to the seizure of the petitioner's pubic hair. Specifically, the petitioner argues that trial counsel failed to use additional pieces of evidence that would have prevented the trial court from issuing the search warrant for the petitioner's pubic hair. At a *Franks* hearing, if the defense proves by a preponderance of the evidence that the affiant included false statements in the warrant affidavit by perjury or with reckless disregard for the truth, and the false statements were necessary to the finding of probable cause, the search warrant is void and the fruits of the search are excluded from the trial. *Franks v. Delaware*, 438 U.S. 154, 156 (1978). Here, the record indicates that trial counsel filed a motion seeking an evidentiary hearing, but the trial court determined that a *Franks* hearing was not warranted. There is no indication that the trial court would have decided to hold a *Franks* hearing, had trial counsel included the suggested information from his amended postconviction petition. In fact, the Illinois Supreme Court found on the petitioner's direct appeal that the evidence seized from the petitioner's person was admissible pursuant to the inevitable-discovery doctrine. *Sutherland*, 223 Ill. 2d at 233. Therefore, we find that the petitioner did not make a substantial showing that the failure to include specific information in the petitioner's *Franks* motion would have made a difference in the outcome of the proceedings overall, as the inevitable-discovery doctrine would have allowed for the admission of

11

the petitioner's pubic hair evidence. Thus, the petitioner has failed to make a substantial showing as to the prejudice prong under *Strickland* regarding this issue.

¶ 27                                    D. Miscellaneous Claims

¶ 28    Among his several claims, the petitioner alleges that trial counsel was ineffective when he failed to use evidence in support of a credible alibi, when he failed to impeach testimony that the petitioner behaved suspiciously after the murder, and when he failed to cast doubt on the petitioner's familiarity with the crime scene. Specifically, the petitioner argues that trial counsel could have called two witnesses who "could have testified" about the car that was near the area at the time of the abduction; that trial counsel could have called two witnesses to contradict the police officer that stated the petitioner was acting suspiciously when she saw him on the night of the murder; and that trial counsel could have called witnesses to contradict the State's position that the petitioner was familiar with the area of the crime scene. Similar to the issues above, after a thorough review of the record, we find that the evidence against the petitioner was overwhelming. Therefore, even if trial counsel had not made the alleged errors, the outcome of the petitioner's trial would have remained unchanged. Accordingly, we find the petitioner has failed to overcome his burden of providing a substantial showing that there was a reasonable probability of a different result at trial as to all the petitioner's remaining claims. Thus, we find that an evidentiary hearing is not warranted regarding the remainder of the petitioner's claims and that the trial court correctly dismissed the petitioner's amended postconviction petition at the second stage of the postconviction proceedings.

¶ 29                                    III. CONCLUSION

¶ 30    For the foregoing reasons we affirm the trial court's dismissal of the petitioner's postconviction petition at the second stage of the proceedings.

¶ 31   Affirmed.